Prosper v. Government of the Virgin Islands Martial Webster, on behalf of the appellant, Diane Prosper, in this matter. Thank you. You may proceed. Do you want to reserve time for rebuttal? No. No, Your Honor. Thank you. No time? Okay. And, please, the court, counsel. The question in this case is whether there were genuine issues of material fact. Whether the appellant, who is Diane Prosper, was an employee under Title VII of the Civil Rights Act 1964 or the Equal Pay Act. And here are the facts. Well, you don't have to get into the facts. We're well familiar with the facts. So, let's just start with some questions. What exactly was the discrimination charge that was filed with the EEOC? Because the other side has said you changed horses and you did not exhaust the claim you're making now, that it's different. So, what was the charge that was filed with the EEOC? Okay. Ms. Prosper first contacted the EEOC in November of 2015. She completed her questionnaire and then in December, I believe, she submitted another document. I think that's when she filed her charges in December with the EEOC. But it was amended. But I'm trying to get you to be specific, so let me try to be more specific. I understand the argument from the other side to be that the charge of discrimination that was put before the EEOC was that Ms. Prosper was not given the proper compensation for her out of role service as acting warden. That other people who were in an out of role position like she was in an acting role received compensation commensurate with the role they were serving in. And she didn't get that. The way they frame it is a failure to timely process paperwork necessary to receive her out of rank compensation for serving as acting warden from 2014 to 2015 and similarly situated males didn't face that. That's how they frame what you put in front of the EEOC. Is that correct? No. What document can you point us to that will tell us that that's wrong, what they're arguing? Her EEOC complaint and the follow-up documentation that she submitted to the EEOC. And she did this pro se. I didn't do it for her. No lawyer assisted her with quality EEOC complaint as far as I know. Sure. And that's, you know, this isn't fault finding with you. Frankly, it's not fault finding with her acting pro se. It's just a simple question of is what's being argued now, does it square up with what was said in front of the EEOC? Because you'd have to acknowledge, wouldn't you, that if it doesn't square up, if it's not the same thing, then they've got a pretty good argument that there's not exhaustion. But as far as I understand, Ms. Prosper submitted three documents to the EEOC with respect to her claim as a layperson. And the essence of her claim was, as far as I understand, was that as a female who served in the position as the warden acting on two separate occasions over 24 months, that the position became available and she was never considered for the position. And I think that's where her – one of her arguments is that because she was a female, a local female who had come through the ranks of the Bureau of Correction and did everything that she needed to do to be where she was when the Bureau of Correction and the position became available, I don't know, asked her to act in that position on two – three separate occasions. I certainly understand that that's the argument. I get that. And that that's the argument made in her complaint. But without wanting to beat this horse anymore, I guess I'm just asking this. If you can – if you can't do it now, send us a 28-J letter. Point us to the exact documents you want us to look at that show that that argument you just made is the charge of discrimination that was put in front of the EEOC. Okay. Well, then we'd have to look at – take our three documents together, our questionnaire. Yeah, show us in the record. This is what she said to the EEOC, and this is why the argument – the charge that's being made right now is the same charge that was in front of the EEOC. But let's assume just for the sake of discussion at this point that you're able to demonstrate that. If you are able to demonstrate that, explain how service as assistant warden is not a policymaking role in light of the statutory language in Title III of Virgin Islands Code, Section 374B. All right. All right. As you know, there were no warden because she was acting for a period of time. Eventually, they did hire a warden, and she was supposed to be the assistant to the warden. Yeah. I apologize for interrupting, Mr. Webster, but you're taking me down a factual path, and I'm trying to stay on a legal path for just a moment. The statute says – well, let me back up. I understand your argument to be she was not in a policymaking role. Am I correct about that? She was not in a policymaking role as defined by the Equal Pay Act and the Civil Rights Act. Okay. And so my question to you is we got to look to the Virgin Islands Code to see what her role was, right? Exactly. That 374B says that the assistant warden is going to have such functions as the director of the Bureau of Corrections prescribes. That's the statutory language. And then the official job description for the assistant warden says she's going to assist in day-to-day operations and be responsible for the formulation of policies, procedures, and instructions as promulgated by the prison warden, responsible for the formulation of policies, procedures, instructions. That's what the Bureau of Prisons says the assistant warden is supposed to do. Why is it just by the force of the statute and then the job description that the Bureau of Corrections gives under the statute, why doesn't that mean she's in a policymaking role as assistant warden? Because any employee under the warden, including a secretary, would assist. And that's what her job is, to assist the warden in creating policies and procedures. And the warden could direct anybody within the Bureau of Corrections to assist the warden in promulgating policies and considerations. But the question is whether or not an employee in the position of the assistant warden can be discriminated against on the basis of sex, national origin, or what have you, without any recourse. And I think that's the bigger question. Well, this is the big question. Because if she's in a policymaking role, by definition, she's not going to be covered by the Title VII and Equal Pay Act provisions that you want to go after because of the definition of employee, right? Well, I think the Equal Pay Act defines what the policymaking role is. And if you look at the statute itself, it talks about who holds the public elective office, selected by a hold of such office to be a member of his personal staff, which she was not, is appointed by such an officer to serve on a policymaking level, which she was not. That's the very discussion we're having. When you move through all those things, you get to appointee on the policymaking level, and that's the challenge. But I'm stealing all the time. I should ask my colleagues if they've got... No, I'm good. I do have a question. In construing the statute that Judge Gordon raised about policymaking, is the court free to, rather than simply accept the language of the statute, to look into the actuality of the job and see whether the employee in question did really formulate policy? Can we ignore the statute and just look at the facts of the situation? I think normally that... I think what was being done by the tort circuit in a lot of these cases, not for discrimination, but where employees... In this case, for instance, where people were terminated and they filed a case against the government of the Virginia. This is a different case. This is not a termination case. This is a case for discrimination under different statutes. Okay, but I'm not talking about whether there's discrimination or not. I'm talking about policy. And the fact that an employee has made no policy, does that trump what the statute says, that it's a policymaking position? I think under our law, VA law, I think you have to look to see what the person actually does. And in this particular case, you see that in regards to who the governor was. Okay, so you're saying get the statute and look at what she actually does. Actually, yes. That's simply the question I asked. She has the same position. Governor come and they go. She's still the acting warden. She's not a part of his staff. And if you look at the PPP Act, that's what they're talking about. They're talking about a person who's a policymaker. Okay, no, you've answered my question. I have a couple of questions for you. The terms exempt and unclassified. Yes, Jordan, I can't hear you. I'm sorry. I was saying I understood the terms exempt terminology of three Virgin Islands code section 451. Yeah. That part of the code divides people into exempt service and career service. And as I look at the language and as it's used in decisions and things, it looks like service and unclassified service are the same and career service and classified service are the same. Those are terms that are used interchangeably. Am I right or wrong about that? I think they are in some instances, and I don't know if we can stick to it as a definitive rule. Because why I say that is because people may come into exempt status because of the position that they hold, but that doesn't necessarily make them a policymaker. Well, here's why this is significant, at least to me. Sure, her job description, job classification is unclassified. That's what it says in the record, her personnel record. If that's true and it's the same as being exempt. Doesn't that put her under another subsection? I guess I'm wrestling a little bit with the significance of that one piece of evidence that her own personnel file says she's unclassified. But, if you look at the Judicial Procedure of the Bureau of Corrections, back in 1984, the director at the time, he says, The director of corrections shall appoint such personnel as are required to administer the provisions of this chapter. By January 1, 1982, so this was before 1984, all employees of the Bureau, other than the director, shall be within the personnel merit system established under Title III, Chapter 24 of the Virginia's Code. Now, there is a question about whether or not exempt and unclassified are synonymous. But I think the Third Circuit in the past, in cases I've looked at, they look to see what the function of the employee was, not simply looking at a label as exempt or classified or unclassified. Exactly what the function of that employee was. She was a uniformed employee when she began, and she was a uniformed employee when she ended. She came up through the ranks, she was paid under the Merit System Protection Act, she was treated, and everything else was under the Merit System Protection Act. An exempt employee, such as the director, cannot be paid for overtime, cannot be paid for acting outside, and cannot receive incentives, educational incentives, and so forth. This is only reserved for employees protected under the Merit System Protection Act. But what about the competitive examination process? Yes, that's a good question, and I'm glad you asked that question because the competitive examination process applies when you go in. This is an organization, the Bureau of Correction. She had to apply before she went in, and she was accepted. She went through the basic training. She completed the basic training. After that, she was on a period of probation, and she became a member of a collective bargaining unit over the years. And over those years, she was promoted from one step to the other through her education and through time and education. Is your argument that it doesn't matter that when she became assistant warden, she didn't go through a competitive process because she went through a competitive process years earlier, and that's what handles that? Yes, because she's a member of the organization. So every time she moved from a correctional officer to a sergeant, she was promoted into that position because of time and rank. In the same way, when she moved into the lieutenant, she was a lieutenant. While a lieutenant, she also acted as the warden when she was a lieutenant, and that's through rank and so forth. And we believe that she became assistant warden because of her rank and the work that she did. On the unpaid assignment, I'm curious. There's no exhaustion requirement on that, right? You didn't have to submit those claims to the EEO. I think she did, though. I don't know. I think she did. I think when she filed the EEOC complaint, she did mention that. I don't know if she did it in an according or what. I didn't think she needed to. I don't think she needed to submit seven claims, but let's assume she did or let's assume she did properly. Let's assume that she didn't have to either way. Let's just focus on the EPA claim for a minute. What is the evidence that—there's a part here where part of her EPA claim seems to stem from her time when she was a lieutenant, right? There's a time where she's assistant warden and then she's promoted to acting warden or she's given the acting warden duty. There's a time she's a lieutenant and she becomes acting warden. So at that point, what is it that is the comparable evidence of discrimination? In other words, who are the individuals that she's claiming held the position that she sought that would give us a universe of comparable office holders that we could evaluate whether there was a potential—whether there's potential evidence of discrimination? She mentioned the names of all the individuals and what they were paid when they held that position. She mentioned Ambassador Richards. She was paid $5,000. Then there was one lady that came in as a warden, and she was paid $75,000. She was hired from Occitan Income. She was hired from Occitan, the territory. They were paying her $75,000, but they were paying the male individuals. $85,000 occupied the same position, but when a male female came in, they paid her $75,000 too. That's the thing. She's saying, here it is. They're bringing these men in from outside who I have to train as a female. I have to train these men, and they're paid $85,000. When they do bring a female in from Oaksite, they're paying her $75,000. When she retired, she was making— Oh, she was making a lot of money because of her education and acting Oaksite. When she's acting Oaksite her rank, then she's— If she's making about $99,500, which is more than the people—the record shows that those who were serving as warden made between $70,000 and $85,000. If she's making more than that, can you make a discrimination claim and an equal payout claim that she's sick? Of course, because she's only making more than that because she's been there for 20 years. They come from nowhere. She's protected by the Merit System Protectors Act, and that's why they have to pay her. If they had moved her to warden, they wouldn't have to pay her $90,000. They could have paid her $85,000 because she would have been acting outside the scope. Do you understand what I'm saying? I understand. Thank you. Good morning, Your Honors, and may it please the Court. Assistant Attorney General Michael Francisco arguing on behalf of the government of the Virgin Islands. Your Honors, to address your specific questions to plaintiff or appellant, what changed? Everything about her claim. Initially, it was very specifically about gender discrimination regarding out-of-rank pay. When she was paid that out-of-rank pay prior to receiving the January 2017 notice of right to sue, she pivoted that now-moved claim into national origin, which was never originally claimed. The Court can confirm that at JA 327 to 331. She also is alleging that she was denied promotion or on the basis of hiring, she suffered some alleged discrimination. None of that was present in her original claim to the EEOC. I would also note that, you know, that issue was brought to the Court as part of the 12B1 motion, which was ultimately determined as a 12B6 motion. That is not the issue before the Court presently. Well, Mr. Francisco, you just said she pivoted from a claim which is now moved. Why is her claim that she— Judge Jordan, I can't hear you. I apologize. We're moving mics around. Thank you. Can you hear me better now? Yeah. Is that better? Okay. Yes. Why is it that the claim that she didn't receive appropriate compensation for her out-of-rank service, why is that moot? Your Honors, in September of 2016, she was paid the out-of-rank pay that she was owed. At that point, she no longer had any claim to additional money. She didn't claim to have been paid less than she was due. So she's not still pressing the point that she was paid less? Because that's what I'm hearing them say. No, I was still—I was paid less. Well, no, she's not specifically saying that she was paid less than she should have been paid while serving out-of-rank. She has pivoted those claims into she was being paid less than males outside of her job description as warden, which are not similarly situated. She was always assistant warden from 2010 to 2015, the time at issue. To the court's point earlier, any potential claims she may have had as a lieutenant for not having been promoted sooner happened well before 2010. She never brought those claims within the time limit specified by either Title VII or the Equal Pay Act or, for that matter, GERA. So is the fact that she had this service from 2008 to 2009 as acting warden while she was lieutenant, are those claims— is that not properly in front of us then, are you saying? It is not, sir, Your Honor. The issue of her as acting warden is somewhat of a red herring in this case because while it was pertinent to the issue of whether or not she was receiving pay for out-of-rank service in a timely manner, similar to those received by males, that claim is no longer live. As previously mentioned, she was paid all of the money due. She's not claiming that she's owed any additional money. She is now saying that she should have been promoted, but she never brought that claim to the EEOC. And if she had, the EEOC should have told her as a political appointee who is exempt from the civil service protection laws of the Virgin Islands, your claims are more properly determined by an administrative law judge. Unfortunately, for unexplicable reasons, the EEOC issued a notice of right to sue. This is, again, after she had been paid. She did not file subsequent to being paid any new claim with the EEOC. And we don't know for that matter whether or not she gave the EEOC enough information for it to properly analyze her claim and her position with the government of the Virgin Islands. Let me ask you this, Mr. Francisco. You heard Judge Mady's question about competitive testing, and Mr. Webster responded, and I may not do his presentation justice, but I'll sum it up as I understood it. He said she went through competitive testing when she came into the service back when she first joined, and that's all that's required. You don't have to go through competitive testing every time you get promoted and come to a new position. And so the fact that there wasn't competitive testing when she became assistant warden is irrelevant to the question of whether she was in a policymaking position, etc., etc. Can you respond to that argument for Mr. Webster, please? Absolutely, Your Honor. I would point the court to two issues. Number one, 3 V.I.C. 512 specifically references promotions as part of the personnel merit system. So that need to go through the competitive process applies equally to hiring as it does to promotion. Separately, the court in Isles v. de Young has specifically said, this court has specifically said that the competitive process and the working probationary period is what the court is to look to, not necessarily whether or not she was receiving additional funds in her salary because of educational courses she had taken. None of that has previously been considered. And that applies also to the V.I.C. Superior and Supreme Court, who in Willox v. Gonzalez referenced the lack of having been through the competitive process, not, you know, any consideration to what she was being paid for educational courses she may have taken. So what's the legal upshot of that here if we say, oh, that is legally relevant. Does the fact that she didn't go through a competitive process but was selected by the governor mean that it's game up for the other side? Well, that is one half of the equation. And as the district court correctly found, she was in a policymaking role, not only by virtue of the statute, which specifically designates Assistant Warden as a policymaking role subject to the whims effectively of the director of the B.O.C. and the governor. There was also her numerous admissions in deposition testimony, in written admissions as a response to interrogatory one, all of which is on the record. Beyond that, there was additional evidence that the district judge did not consider but would also speak to the fact that she was in a policymaking role. I understand that you say I understand you're saying we could win for a lot of reasons. But the question I'm trying to answer is, is the fact that she didn't go through competitive testing all by itself enough to take you where you want to go. Your Honor, I wish I could say yes, but that is not the case. In Islesby v. Young, the court also looked to whether or not the position was submitted to the legislature. And the district court did touch on that fact and acknowledged that as far as characterizing the employment, state laws is what the court looks to. But in terms of interpreting federal law for the purpose of the definition of employee under the two acts that this plaintiff filed under, that she was a policymaking employee who is not subject to the civil service protection laws and therefore exempt from Title VII and the Equal Pay Act. That is not to say that she may not seek recompense for her potential claims under JARA. In fact, the district court made very clear that in its opinion, the EEOC would be right to toll the charge filing requirements there. But in many facets, she does not, she is exempt from Title VII and the Equal Pay Act. Are the words exempt and unclassified synonyms in Virgin Islands law, employment law? Yes, Your Honor, the court was correct in 3 BIC 451A subpart D. It very specifically says that those terms are synonymous. And I think that that was added because there was some confusion as to these unclassified, exempt, classified, regular, these terms. So it was there to provide clarity. It is very clear that plaintiff under both 451A1 and 8, that she is exempt from the civil service protection laws. And that is the second part of the equation here, being that she failed both parts of that test. The court was correct on summary judgment based on the record, an extensive record that showed that she had failed those two subparts. It granted summary judgment. All right. Judge Mady, any questions? Could you touch upon the EPA claims for a moment and how your arguments that you've made so far overlap or diverge on that claim? Yes, Your Honor, I believe it was the district court in the opinion itself that laid out the fact that the EPA and Title VII, the definition of employee, both exempt essentially the exact same thing, albeit in slightly different terms. And the case law that the court cited to acknowledge the fact that when that is the case, it did not need to go through the exact same, it did not need to say in the exact same terms that the policymaking role and the exemption applied equally because it was, you know, looking at the language of the statute, it did not need to re-go through the exact same process for the same reasons. Judge Roth, any questions? No, I have no further questions. Okay. And Mr. Webster did not reserve any time for rebuttal, so we'll wrap it up here, but I will say if there's, we'd appreciate getting a 28-J letter within the next two weeks, cross letters at the same time, just pointing to where in the record you want us looking to understand explicitly and precisely what the claim was that she made to the EEOC. You know, that this is our position as to what exactly the claim was, and this is the document and where it is in the record that demonstrates it. All right? Yes, thank you. Thank you, Your Honor. All right, thanks.